IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1169-11
 





JERI DAWN MONTGOMERY, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY





 Johnson, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Appellant caused a three-car collision, during which a passenger in one of the other vehicles
was killed. The grand jury indicted appellant for criminally negligent homicide, alleging that she
had made an unsafe lane change and had failed to keep a proper lookout. A petit jury found
appellant guilty and also found that appellant's vehicle was a deadly weapon. The jury assessed
punishment of ten years' confinement in the Texas Department of Criminal Justice, probated for ten
years, and a $10,000 fine. On appeal, the Fourteenth Court of Appeals found the evidence
insufficient to sustain the conviction and rendered a judgment of acquittal. (1) This Court granted the
four grounds raised in the state's petition for discretionary review.

1. The court of appeals erred in holding that "cell phone usage while operating a
vehicle" does not constitute morally blameworthy conduct and does not justify
criminal sanctions. 


2. The court of appeals erred in presuming that the negligent act in a criminally
negligent homicide must itself be an illegal act. 


3. The court of appeals erred in holding that the evidence was insufficient to prove
criminally negligent homicide where the appellant was traveling less than 39 miles
per hour and was 92 feet past the interstate highway entrance ramp at the time that
she attempted to cross in front of other vehicles to enter the freeway. 


4. The court of appeals erred in holding that the evidence was insufficient to prove
criminally negligent homicide where the appellant was admittedly distracted by
talking on a cell phone at the time that she attempted to cross in front of other
vehicles to enter the interstate highway ramp, which she had already missed by 92
feet. 


 After review, we find that the evidence was legally sufficient to sustain appellant's conviction
for criminally negligent homicide, and we reverse the judgment of the court of appeals. 

Facts

 At approximately 8:30 p.m. on March 24, 2008, appellant was driving her mid-size SUV in
the center lane of the three-lane service road adjacent to Interstate Highway 45 (IH-45) and talking
on her cell phone. After hanging up the phone, appellant realized that she had missed the entrance
ramp to IH- 45, which diverged from the left lane of the service road. Appellant abruptly swerved
into the left lane to try to get onto the ramp, even though the beginning of the solid-white-lined area
on the pavement between the ramp and the service road, often known as the "safety barrier," was
behind her. There was disagreement at trial between the state's and appellant's experts as to how
far past the entrance ramp appellant was when she changed lanes, but they agreed that it was after
the safety barrier began. The state's expert testified that it was 92 feet past the entrance to the ramp;
appellant's expert estimated a lesser distance. 

 As appellant moved abruptly into the left lane, she cut off Cochise Willis, who was driving
his three-quarter-ton pickup truck in the left lane of the service road. Willis testified that he was
driving at the speed limit-50 miles per hour-and that appellant was driving more slowly than Willis
when she moved into the left lane ahead of him. Willis tried to slow down and get into the center
lane, but he could not avoid hitting the rear of appellant's SUV, slightly to the right of its center. At
the time of impact, appellant's vehicle was almost entirely in the left lane, and Willis's truck was
over the dividing line between the left and center lanes. The collision caused appellant's vehicle to
rotate in a counterclockwise direction, crossing over the safety barrier and onto the entrance ramp
itself. The front of appellant's SUV struck the passenger side of Terrell Housley's pickup truck,
which had just been driven onto the entrance ramp. Chance Wilcox was a passenger in the truck. 
After the collision, Housley's truck rotated clockwise, causing it to hit the curb that separates the
entrance ramp and the safety barrier and flip over, coming to a stop upside down. As Housley's
truck flipped, Wilcox was ejected, and he died at the scene from trauma to his head and neck. At
the same time, the collision with Housley's truck caused appellant's SUV to flip onto its left side and
skid to a stop. Willis never lost control of his truck. He pulled into the emergency lane of the
service road and stopped. 

The Court of Appeals's Opinion

 The court of appeals found that the evidence was insufficient to establish the requisite mens
rea of criminal negligence, noting that 

 the State presented evidence of appellant's use of a cell phone while driving, her unsafe lane
change, and her failure to maintain a proper lookout. Only one of the three factors was a
moving violation under Texas Law: making an unsafe lane change. However, the State
placed primary emphasis on a factor that was not even listed in the indictment as proof of
appellant's negligence: cell phone usage. . . . [B]y continuing that emphasis in this appeal,
the State encourages this court to legislate through judicial fiat. Except under very limited
circumstances not at issue in this case, using a cell phone while driving is not an illegal
activity in Texas. (2)


 Focusing on the prosecution's presentation of cell-phone use as a primary factor establishing
appellant's criminally negligent behavior, the court of appeals found that the state introduced no
competent evidence that cell-phone use while driving increases the risk of fatal accidents and held
that, without evidence that such a risk was generally known and disapproved of in the community,
no reasonable fact finder could find that using a cell phone while driving turned a simple moving
violation into criminally negligent homicide. Thus, the state had failed to establish that appellant
ought to have been aware of a substantial and unjustifiable risk that death would result from her
actions and that her failure to perceive such a risk was a gross deviation from the standard of
ordinary care. 

 The state argues that, had the court of appeals used the correct standard of review and viewed
the evidence in the light most favorable to the verdict, the court would have concluded that the
evidence was legally sufficient to sustain the conviction. The state contends that the court of appeals
relied on two incorrect theories of law: (1) cell-phone use while driving does not constitute morally
blameworthy conduct and therefore does not justify criminal sanctions; and (2) the negligent act in
a criminally negligent homicide must itself be an illegal act. The state contends that the court of
appeals required evidence of an increased risk of fatal crashes from cell-phone use, but such a risk
is generally known and disapproved of in the community; the dangers of driving while talking on
a cell phone have been well known for years and has even been criminalized in certain situations by
the Texas Legislature. And even though appellant violated at least one traffic law when she made
an unsafe lane change into the left lane, it is not the law in Texas that the negligent act must be
illegal. 

Sufficiency of the Evidence

 The state's third and fourth grounds for review challenge the court of appeals's sufficiency
review of the evidence. When reviewing the sufficiency of the evidence, we view the evidence in
the light most favorable to the verdict to determine whether "any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt." (3) The jury is the sole judge
of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court
must not usurp this role by substituting its own judgment for that of the jury. (4) The duty of the
reviewing court is simply to ensure that the evidence presented supports the jury's verdict (5) and that
the state has presented a legally sufficient case of the offense charged. (6) When the reviewing court
is faced with a record supporting contradicting inferences, the court must presume that the jury
resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. (7) 

 To make a legally sufficient showing of criminally negligent homicide, the state must prove
that (1) appellant's conduct caused the death of an individual; (2) appellant ought to have been aware
that there was a substantial and unjustifiable risk of death from her conduct; and (3) appellant's
failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person
would have exercised under like circumstances. (8) The circumstances are viewed from the standpoint
of the actor at the time that the allegedly negligent act occurred. (9) Criminal negligence does not
require proof of appellant's subjective awareness of the risk of harm, but rather appellant's
awareness of the attendant circumstances leading to such a risk. (10) The key to criminal negligence
is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of
the actor to perceive the risk at all. (11)

 Conduct that constitutes criminal negligence involves a greater risk of harm to others,
without any compensating social utility, than does simple negligence. (12) The carelessness required
for criminal negligence is significantly higher than that for civil negligence; the seriousness of the
negligence would be known by any reasonable person sharing the community's sense of right and
wrong. (13) The risk must be "substantial and unjustifiable," the failure to perceive it must be a "gross
deviation" from reasonable care as judged by general societal standards. (14) "With criminal
negligence, the defendant ought to have been aware of a substantial and unjustifiable risk that his
conduct could result in the type of harm that did occur, and that this risk was of such a nature that
the failure to perceive it was a gross deviation from the reasonable standard of care exercised by
ordinary people." Williams v. State, 235 S.W.3d 742, 750-51 (Tex. Crim. App. 2007). The degree
of deviation from reasonable care "is measured solely by the degree of negligence, not any element
of actual awareness." (15) In finding a defendant criminally negligent, a jury is determining that the
defendant's failure to perceive the associated risk is so great as to be worthy of a criminal
punishment. (16)

 After reviewing the record, we conclude that the state has met its burden of proving all of the
elements of criminally negligent homicide. Appellant made an abrupt lane change in front of
Willis's truck, causing that truck to strike the rear of appellant's SUV, and then causing her SUV
to strike Housley's truck, from which Wilcox was ejected and died. The state has thus shown that
appellant, by making an unsafe lane change, caused the death of Wilcox. 

 The state has also proved that appellant ought to have been aware of the substantial and
unjustifiable risk created by her conduct. The court of appeals, focusing on her cell-phone use, found
that the state had not proved that appellant ought to be aware of the risk present because the state did
not present evidence that cell-phone use while driving poses a risk to others. However, the
indictment made no mention of use of a cell phone. Rather, the indictment alleged that appellant
caused Wilcox's death by making an unsafe lane change and failing to maintain a proper lookout
when she made that lane change. Nor did the jury charge mention appellant's use of a cell phone. 
The jury charge read,

 Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day
of March, 2008, in Harris County, Texas, the defendant, Jeri Dawn Montgomery, did then
and there unlawfully, cause the death of Chance Wilcox, by criminal negligence, namely,
while operating a motor vehicle, making an unsafe lane change and failing to keep a proper
lookout, causing the defendant's vehicle to collide with a motor vehicle occupied by Chance
Wilcox, then you will find the defendant guilty of criminally negligent homicide, as charged
by the indictment. (17) 


 Through the testimony of its witnesses and experts, and by cross-examination of appellant's
witnesses and experts, the state presented evidence that: appellant was driving her SUV on the access
road of IH-45; the speed limit was 50 miles per hour; appellant was driving more slowly than
surrounding traffic; appellant was up to 92 feet past the beginning of the entrance ramp onto IH- 45
when she abruptly changed lanes; appellant did not signal the lane change or look for other vehicles
approaching in the left lane; and appellant intended to enter IH-45 via the entrance ramp that she had
already passed. The state also presented evidence that, just before the accident, appellant was
driving and talking on her cell phone and that appellant admitted using the cell phone had distracted
her. As Justice Hudson pointed out in his dissent in the court of appeals, the state had no burden to
show that driving while using a cell phone is always risky or dangerous, or that it, of itself, creates
a substantial and unjustifiable risk, only that appellant's use of a cell phone in this case created a
substantial and unjustifiable risk because it interfered with her ability to maintain a proper lookout
for other vehicles. (18) 

 Given these circumstances, we find that a jury could have reasonably concluded that
appellant ought to have been aware of the substantial and unjustifiable risk created by her actions. 
Appellant was driving at speeds high enough to be lethal, should a collision occur. It is common
knowledge that failing to maintain a proper lookout and making an unsafe lane change without
signaling or checking for upcoming traffic poses a great risk to other drivers on that road and that
anyone sharing the general community's sense of right and wrong would be aware of the seriousness
of doing so. 

 Finally, we hold that the jury could have reasonably found that appellant's failure to
appreciate the substantial and unjustifiable risk, given the circumstances known to her at that time,
was a gross deviation from a standard of care that an ordinary person would exercise under the same
circumstances. The state presented evidence that appellant had missed the entrance ramp for the
highway because she was distracted by talking on her cell phone. Further evidence indicated that,
although appellant knew that she had missed the entrance ramp, she still attempted to move to the
left lane, cut across the "safety barrier," and get onto the entrance ramp. Both the state's and
appellant's accident reconstruction experts testified that appellant made an unsafe or "aggressive"
lane change into the left lane and that Willis could not have avoided hitting appellant's vehicle. 
Willis testified that appellant was driving more slowly than surrounding traffic and did not signal
or use her brakes before she changed lanes. From the evidence presented, the jury could have found
that appellant failed to perceive the substantial and unjustifiable risk created by her conduct. 

 Appellant argues that her conduct was not a gross deviation from the ordinary standard of
care and that she was subjected to criminal liability for a common traffic accident with fatal results. 
The court of appeals, again focusing on the lack of evidence presented regarding the dangers of
talking on a cell phone while driving, found that the use of a cell phone while driving was such
common practice that it would be difficult for a rational fact finder to find it to be a gross deviation
from the ordinary standard of care. 

 The court of appeals mistakes what conduct was alleged to constitute the gross deviation in
this case. The gross deviation from the ordinary standard of care argued by the state in this case was
not appellant's use of a cell phone, but rather that appellant made an unsafe lane change and failed
to maintain a proper lookout, at least partly as a result of the distraction created by her use of the cell
phone. The state was not required to present evidence of the dangers of using a cell phone while
driving in order to carry its burden of proof, but such a use of a cell phone may be considered as a
factor in determining whether a defendant grossly deviated from the ordinary standard of care. The
question of whether appellant's conduct was a "gross deviation" is a question to be answered by the
fact finder and here, a rational jury could conclude that it was. We sustain the state's third and fourth
grounds for review.

Cell Phone Use

 In its first ground, the state argues that the court of appeals erred in holding that cell-phone
use while driving does not constitute morally blameworthy conduct and does not justify criminal
sanctions. The morally blameworthiness of cell-phone use while driving, by itself, is not the issue
in this case, and we will therefore not address it. It is within the purview of the legislature, not the
courts, to determine what does and does not justify criminal sanctions. (19) We dismiss the state's first
ground for review. 

Illegality of the Underlying Act

 In its second ground, the state contends that the court of appeals erred in presuming that the
negligent act in a criminally negligent homicide must itself be an illegal act. We do not read the
court of appeals's opinion to presume that the underlying act must itself be illegal. In footnote 10,
the court of appeals listed a number of clearly legal-yet-distracting activities that, under the proper
circumstances, may cause negligent driving. (20) By including such a list, the court of appeals clearly
did not presume that the negligent act must violate Texas law. Instead, in considering whether a
finding of a gross deviation from the standard of care was supported by the record, the court of
appeals mistakenly focused on the absence in the record of any fact witnesses or scientific studies
showing that cell-phone use while driving increases the risk of fatal accidents. We overrule the
state's second ground for review.

Conclusion

 We hold that the evidence was legally sufficient to support the jury's verdict of guilty of
criminally negligent homicide. We vacate the judgment of the court of appeals and remand the cause
to the court of appeals so that it may address appellant's remaining points of error.


Delivered: June 20, 2012

Publish
1. Montgomery v. State, 346 S.W.3d 747 (Tex. App.--Houston [14th Dist.] June 2, 2011, pet. granted). 
2. Id. at 752-753. 
3. Brooks v. State, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)). 
4. Id. at 899. 
5. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). 
6. Id. at 753-754. 
7. Brooks, 323 S.W.3d at 900 n.13 (citing Jackson, 443 U.S. at 326). 
8. See Tello v. State, 180 S.W.3d 150, 156 (Tex. Crim. App. 2005); see also Graham v. State, 657 S.W.2d
99, 101(Tex. Crim. App. 1983). 
9. Tello, 180 S.W.3d at 150 (Tex. Crim. App. 2005); Graham, 657 S.W.2d at 101. 
10. Tello, at 159 (Cochran, J., concurring). 
11. Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). 
12. Tello, at 158-159 (Cochran, J., concurring). 
13. Id. at 158. 
14. Id.
15. Tello, at 158.
16. See id.
17. I C.R. at 327. 
18. Montgomery, 346 S.W.3d at 756 (Hudson, J., dissenting)(emphasis added). 
19. In 2005, the legislature first enacted a law that governed use of cell phones; that law prohibited persons
under the age of 18 years of age from driving while using a cell phone. See Act of June 17, 2005, 79th Leg., R.S., ch.
357, § 5, 2005 Tex. Sess. Law Serv. Ch. 357 (codified at Tex. Transp. Code § 545.425). In 2009, the Legislature
amended sections of the Transportation Code to state that, in very limited circumstances, criminal sanctions are
appropriate for the use of a cell phone by persons of any age while driving. See Tex. Transp. Code §§ 545.424-425
(2009). These circumstances are not present in this case, and, even if they were, the applicable amendments became
effective eighteen months after this incident.
20. Montgomery, 346 S.W.3d at 753 n.10.